102 So.2d 915

Hugh WEBB, d/b/a Webb Insurance Company

v.

Boyd E. LITZ.

3 Div. 14.

Court of Appeals of Alabama.

May 20, 1958.

Thos. W. Sullivan, Montgomery, for appellant.

Ballard, Ballard & Akers, Montgomery, for appellee.

CATES, Judge.

This is a civil action at law based upon Webb's complaint reading as follows:

"The Plaintiff claims of the Defendant the sum of Four-hundred and Eighty-nine and 75/100 ($489.75) Dollars, for that on to-wit: August 9, 1955, the Defendant did purchase from the Plaintiff one 1954 Volks Wagon automobile, Motor No. 10801–853, and did enter into a conditional sales contract for the payment of said automobile, payable at the rate of Seventy-Five and 00/100 (75.00) Dollars per month; that thereafter the Defendant did default in said payments and it became necessary for Plaintiff to repossess said automobile and that as a result of Defendant's breach the Plaintiff was forced to sell said automobile upon the open market to his loss as aforesaid.

"Plaintiff further avers that one of the conditions in said conditional sales contract is that the Defendant shall pay a reasonable Attorney's fee should it become necessary to employ an attorney, and Plaintiff claims an additional One-hundred and twenty-two and 43/100 ($122.43) Dollars as attorney's fees.

### Count II

"Plaintiff claims of the Defendant the sum of Six-hundred and Twelve and 18/100 ($612.18) Dollars due from him on account on the 5th day of December, 1955; which sum of money with interest thereon, is still due and unpaid."

To this complaint as a whole, Litz demurred and separately and severally to each count thereof. We treat the demurrer as being sufficient to point out the defect in Count 1 which we shall discuss later.

On November 2, 1956, the Circuit Court of Montgomery County entered an order sustaining the demurrer in toto, whereupon the plaintiff declined to plead further and moved for a nonsuit. A judgment of dismissal was entered against him with leave to appeal to this court.

One of the complainant's assignments of error is that Count 2 of the complaint is in statutory form as prescribed by Code 1940, T. 7, § 223, No. 10, and, therefore, not subject to objection by way of demurrer.

At common law, pleading commenced with the execution of a writ after which the plaintiff was given a certain time, usually three days after the commencement of the term at which the writ was returnable, to file his declaration. Cf. Toulmin's Digest, T. 36, Ch. I, p. 453, § 31, Ch. XXIV, p. 476, § 7; Aiken's Digest, p. 276, § 104.

This seems to have been the system that prevailed in Alabama up until 1852 when the Legislature undertook, by the Code of that year, to alter much of the manner and form of pleading and practice at law, so that in § 2160 of the 1852 Code we find that an action at law is commenced by the service of a summons, to which a copy of a "complaint" was required to be attached. This in lieu of the common law "declaration." With the 1940 Code the "filing" of the originating summons with a complaint attached rather than "service" became the point of beginning of an action.

The use of the so-called common counts as an addition to counts based on assumpsit is familiar to all practitioners. Stephen, whose first and second editions of the Principles of Pleading were published before any of the English pleading reforms of 1833–34 and accordingly are our best Encyclopedic text of what was the English common law on July 4, 1776, says (in 2nd Ed.—Tyler, American Editor) at pp. 258–261:

"* * * it happens more frequently than otherwise that, when various counts are introduced, they do *not* really relate to distinct claims, but are adopted merely *as so many different forms of propounding the same cause of action,* and are therefore a mere evasion of the rule against duplicity. This is a relaxation of very ancient date, and has long since passed, by continual sufferance, into allowable and regular practice. It takes place when the pleader, in drawing the declaration or bill in any action, or in preparing the praecipe for an original writ in trespass, or trespass on the case, after having set forth his case in one view, feels doubtful whether, as so stated, it may not be insufficient in point of law, or incapable of proof in point of fact; and at the same time perceives another mode of statement, by which the apprehended difficulty may probably be avoided. Not choosing to rely on either view of the case exclusively, he takes the course of adopting both; and accordingly inserts the second form of statement in the shape of a second count, in the same manner as if he were proceeding for a separate cause of action. If, upon the same principle, he wishes to vary still further the method of allegation, he may find it necessary to add many other succeeding counts besides the second; and thus, in practice, a great variety of counts often occurs in respect of the same cause of action; the law not having set any limits to the discretion of the pleader, in this respect, if fairly and rationally exercised.

"It may be desirable, however, to explain more particularly in what case, and with what objects, resort is had to several counts in respect of the same cause of action. This may happen either where the state of facts to which each count refers is really different, or where the same state of facts is differently represented. * * *

* * * * * *

"* * * But it more frequently happens that it is the *same state of facts differently represented* which

446

forms the subject of different counts. Thus, where a man has ordered goods of another, and an action is brought against him for the price, the circumstances may be conceived to be such as to raise a doubt whether the transaction ought to be described as one of *goods sold and delivered*, or of *work and labor done*; and, in this case, there would be two counts, setting forth the claim both ways, exactly as in the two first counts of the last example, in order to secure a verdict, at all events, upon one of them. And it may be useful to observe here that, upon this principle, the four last counts of that example, viz, those for *money lent and advanced, money paid, money had and received*, and *money due on account stated*, (commonly called the *money counts*,) are, some or all of them, generally inserted, as a matter of course, in every praecipe, declaration, or bill in assumpsit, though the cause of action be also stated in a more special form in other counts. This is done because it often happens that, when the special counts are found incapable of proof at the trial, the cause of action will resolve itself into one of these general pecuniary forms of demand, and thus the plaintiff may obtain a verdict on one of these money counts, though he fail as to all the rest. Again, the same state of facts may be varied, by omitting, in one count, some matter stated in another. In such a case the more special count is used, lest the omission of this matter should render the other insufficient in point of law. The more general count is adopted, because, if good in point of law, it will relieve the plaintiff from the necessity of proving such omitted matter in point of fact. If the defendant demurs to the latter count as insufficient, and takes issue in fact on the former, the plaintiff has the chance of proving the matter alleged, and also the chance of succeeding on the demurrer. If, on the other hand, the defend-

ant does not think proper to demur, but takes issue in fact on both, the plaintiff will have no occasion at the trial to rely at all upon the former count, but will succeed by merely proving the latter."

■ A complaint under our present law, as might the common law declaration before it, may contain one or more counts arising out of the same transaction, provided the defendant be not "twice charged for the same thing." Chitty on Pleading (16th Am.Ed.) p. 429; West v. Toles, Salk. 213, so that we find:

"* * * The several counts of a declaration are regarded as its different parts or sections · * * * and in framing it, unnecessary repetition should be avoided. This may be done by the counts referring to each other; but unless such reference is made, one count will not be aided by another; 'for though both counts are in the same declaration, yet they are as distinct as if they were in separate declarations; and consequently, they must independently contain all necessary allegations, or the latter count must expressly refer to the former.' * * *" Mardis' Adm'rs v. Shackleford, 6 Ala. 433.

"If, however, there is not an express reference, the several counts are considered as distinct as if contained in separate declarations. * * *." Robinson v. Drummond, 24 Ala. 174.

"* * * Under our system of pleading the several counts of the complaint are considered separate and distinct, and to be tested for their sufficiency by the averments thereof without reference to any other count, * * *." Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245, 250.

Code 1940, T. 7, § 219, reads:

"All actions on contracts, express or implied, for the payment of money, whether under seal or not, though some

may contain a waiver of the right of exemption and others not, may be united in the same action, and the issues may be determined separately by the jury under the direction of the court, and the costs fairly apportioned."

The practice under this section was well elucidated by this court in Abraham Bros. v. Means, 16 Ala.App. 429, 78 So. 459, 460, wherein the opinion reads:

"The cause was tried on two counts; count 2 claiming for a breach of warranty, and count 3 for money had and received. There was nothing to indicate that the claims as set out were for inconsistent remedies growing out of the same transaction. The complaint therefore was not subject to demurrer on that ground. Code 1907, § 5328. Issue being joined on both counts, and there being evidence tending to sustain each of the counts, the refusal to give the affirmative charge as to either count was not error. Both counts being before the jury, and there being evidence tending to support each, the court properly charged on the law as applicable to each count.

"Where it develops on the trial that there are counts in the complaint asserting inconsistent remedies growing out of the same transaction, the court, on motion, will require the plaintiff to elect as to which remedy he will pursue, but the defendant did not make this motion, but allowed the trial to proceed to judgment."

■ The Code form of complaint on the common counts (T. 7, § 223, No. 10) referred to, supra has been held sufficient against demurrer in Alabama Lime & Stone Co. v. Adams, 218 Ala. 647, 119 So. 853, and Willingham v. Wesley Hardware Co., 227 Ala. 280, 149 So. 703. Indeed, this doctrine is but a compliance of the mandate of the introductory clause in § 223, viz., "complaints in civil cases in substantially the following form *shall* be sufficient: * * *" (Emphasis supplied.) See

also Brooklyn Life Ins. Co. v. Bledsoe, 52 Ala. 538.

Count 2 is aptly adapted from this form. Accordingly, whatever defects may reside in Count 1 of the complaint here, Count 2 is impeccable, unless through some metamorphosis vitiating language in Count 1 is by implication adopted in Count 2.

■ As we read the complaint, there is no express reference from one count to the other, so that the exception in Robinson v. Drummond, supra, would not operate to incorporate any defects of Count 1 into Count 2.

The specific defect which appellee assigns to make Count 1 objectionable is the reference therein to "a conditional sales contract," coupled with the allegation that upon repossession of the Volkswagen the plaintiff suffered a loss upon selling it in the open market, i. e., he seeks a deficiency judgment.

■ Our cases uniformly hold that a conditional sales contract does not, in effect, bring about a merger of the sale into an instrument representing an evidence of debt; but rather that upon default the vendor has the election to retake which, ordinarily, then and there cuts off the promise to pay, regardless of what the status might have been before the election. As the defendant aptly points out, the leading cases are Perkins v. Skates, 220 Ala. 216, 124 So. 514, and S. F. Bowser & Co., Inc., v. Harris, 241 Ala. 113, 1 So.2d 14. The election to retake is in the nature of a rescission, Williston, Sales, § 579b.

This court has had occasion in the recent leading case of Bern v. Rosen, 36 Ala. App. 296, 55 So.2d 361, 363, affirmed by the Supreme Court, 259 Ala. 292, 66 So. 2d 711, to distinguish between a chattel mortgage and a conditional sales contract, again affirming the principal criterion of a conditional sales contract as follows:

"'* * * if a vendor in a conditional sale exercise his option to take back the property sold, he can not

thereafter enforce the payment of the purchase price, as the assertion of either right is an abandonment of the other. \* \* \*' " citing cases.

The appellant earnestly insists that his paper was, in fact, a chattel mortgage, and that the expression "conditional sales contract" was a mere loose general description of some type of lease-hire arrangement between the parties. Indeed, in brief he submits to us what purport to be the provisions of the instrument claiming it to be identical with that set forth in Bern v. Rosen, supra. Unfortunately for his contention we cannot deviate from the record, Williams v. Schaeffer, 262 Ala. 636, 80 So.2d 722, Grace v. Birmingham Trust & Savings Co., 257 Ala. 507, 59 So.2d 595.

We consider the expression "conditional sales contract" to be of such a fixed nature in our law, particularly as distinguished from a chattel mortgage, as to render the use of it in this complaint, coupled with the claimed right to a deficiency after foreclosure, to be mutually exclusory, unless the plaintiff were to have averred some contract stipulation that permitted him to repossess, sell and demand a deficiency. Campbell Motor Co. v. Spencer, 22 Ala.App. 465, 116 So. 892; 49 A.L.R.2d 69.

> " \* \* \* The bill does, however, contain repeated references to the contract between vendor and purchaser as a 'conditional sale contract,' and this collocation of words is of such common and frequent use in connection with transactions of the kind as to justify the stated conclusion. \* \* \*" Commercial Inv. Trust v. East, 217 Ala. 626, 117 So. 160, 161.

We expressly hold that Count 1 was bad, since having used the expression "conditional sales contract" it should thereafter have set forth some express agreement which would have conferred the power under such an agreement to hold Litz for any deficiency resulting from a foreclosure sale. Commercial Inv. Trust v. East, supra, and Campbell Motor Co. v. Spencer, supra.

Indeed, the Supreme Court's language in Bern v. Rosen, supra, appears so sweeping that it could also be said that a true conditional sales contract in Alabama could not provide for any type of deficiency since a provision for deficiency ipso facto would make the instrument a chattel mortgage.

The Campbell Motor Co. case was discussed by the Supreme Court and apparently taken out of conditional sales in Bern v. Rosen, 259 Ala. 292, 66 So.2d 711, 712:

> "The Alabama rule is mentioned in 47 Amer.Jur. 37, 38, § 845, where it is stated:
>
> " ' \* \* \* However, it has been held that a provision for payment of the deficiency renders a transaction a retention of title by way of security only, and not a conditional sale, and this rule is well established in a few jurisdictions which distinguish between a pure conditional sale and a sale with reservation of title by way of security merely, which is deemed in effect a chattel mortgage. \* \* \*'
>
> "The case of General Motors Acceptance Corp. v. Crumpton, 220 Ala. 297, 124 So. 870, 871, 65 A.L.R. 1313, is cited to support the text. While a different statute was under consideration in the Crumpton case, the contract was essentially the same, in pertinent respects, as the one here. The theory was approved that the contract rather than being one of conditional sale was one in the nature of a security for the debt 'vesting in the vendee the general and beneficial ownership with the right of possession and use until default'.
>
> "Previous decisions of this court have consistently approved that theory *where the mortgage clause was absent in a conditional sale contract,* the holding being that *the resort to the remedy under the conditional sale feature was a waiver of the right to hold the ven-*

*dee liable for the deficiency,* since the status of the parties with respect to the two theories was inconsistent and could not obtain in the same contract. * * *" (Emphasis supplied.)

Being at the conclusion that we cannot, by implication or express reference, read the allegations of Count 1 into Count 2 without, in effect, carrying the bad with the good, and being moreover of the view that Count 2 does not admit of any outside reference, we hold it was error to sustain the demurrer as to this count.

We realize that this ruling is of a most abstruse nature, since all Alabama practitioners consider the counts of a complaint as being but different ways of saying the same thing, yet historically we have followed the common law precedent of treating each count as a separate declaration.

■ If the demurrer is as to the whole declaration (or complaint) and there is one good count, the demurrer should be overruled, save for misjoinder.

" * * * It is further said, that the first count in this declaration is defective in other respects. These we deem it unnecessary to notice, for if this count were bad, the defendant below should have demurred to it, and not to the whole declaration. He however, chose the latter method, and in that state of the pleadings as the second count is good, the demurrer was properly overruled. * * *" Pettigrew v. Pettigrew, 1 Stew. 580.

"There was a demurrer by defendant to the whole declaration, which was overruled. If the three first counts were bad, the count in trover was good, and it is clear that, as there was one good count, it was proper to overrule a demurrer to the entire declaration, there being no misjoinder of counts in this case." Hooks v. Smith, 18 Ala. 338.

" * * * for it is a well settled rule, that if there be several counts in a declaration, some of which are sufficient, and others not, the defendant should only demur to the bad counts; and if he demur to the whole declaration, the judgment must be against him. 1 Chitt.Pl. 643." Spann v. Boyd, 2 Stew. 480.

Accord: Smith v. Salomon, 1 Colo. 176, 91 Am.Dec. 711; Tinsman v. Belvidere Delaware R. Co., 25 N.J.L. 255, 1 Dutch. 255, 64 Am.Dec. 415; Freeland v. McCullough, 1 Denio, N.Y., 414, 43 Am.Dec. 685; Biddle v. Coryell, 18 N.J.L. 377, 3 Harrison 377, 38 Am.Dec. 521; Lane v. Levillian, 4 Ark. 76, 37 Am.Dec. 769; United States v. White, 2 Hill, N.Y., 59, 37 Am.Dec. 374.

■ Moreover, under the scrutiny imposed by demurrer, each count stands or falls by virtue of its averments, Paterson Edey Lumber Co. v. Carolina-Portland Cement Co., supra. Again we find in Stephen, Principles of Pleading, supra, p. 354:

" * * * Therefore, if a declaration be good in part, though bad as to another part relating to a distinct demand divisible from the rest, and the defendant demur to the whole, instead of confining his demurrer to the faulty part only, the court will give judgment for the plaintiff. * * *"

to which the learned author cites Duppa v. Mayo, 1 Saund. 276, 286, note 9; Bacon's Abridgment, Pleas & Pleading, (B) 6; Cutforthay v. Taylor, Raym. 395; Judin v. Samuel, 1 New Rep. 43; Benbridge v. Day, 1 Salk. 218; Powdick v. Lyon, 11 East 565; Amory v. Broderick, 5 Barn. & Ald. 712.

In Judin v. Samuel, supra, we find:

"Sir James Mansfield, Ch. J. This question is rather new to me; but I do not see how the two latter counts, supposing them to be bad, as being

drawn in *tort* instead of *assumpsit,* can, on a general demurrer, affect the first count to which no objection can be stated. * * *"

The second count being good (even though we might strongly suspect it cannot be supported by the evidence), the demurrer to it was not well taken. Therefore, while the court properly sustained the demurrer to the first count, it should have overruled it as to Count 2 on authority of Alabama Lime & Stone Co. v. Adams, supra.

Reversed and remanded.